## Richmond

VIRGINIA ELECTRIC AND POWER COMPANY v. PERRY ENGINEERING
COMPANY, INCORPORATED.

April 24, 1972.

Record No. 7689.

Present, Snead, C.J., I'Anson, Carrico, Gordon, Cochran and Harman, JJ.

*Lewis T. Booker* (*George D. Gibson; Hunton, Williams, Gay, Powell & Gibson*, on brief), for plaintiff in error.

*Walter L. O'Neal* (*Charles H. Duff; Duff, Slenker, Brandt & Jennings*, on brief), for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

The Chesapeake and Potomac Telephone Company contracted with Perry Engineering Company, Inc. to lay underground telephone cables in Reston, Virginia. On June 14, 1967, while laying the cables, Perry dug into underground utility cables that had been previously laid by the Virginia Electric and Power Company. The damage to the Vepco cables was $4,466 and Vepco brought an action against Perry to recover that amount. The action was based on two counts, one premised on trespass and the other on negligence. The evidence pertaining to the trespass count was struck by the trial court and no error was assigned to that ruling. The case went to the jury on the negligence count and the jury returned a verdict in

favor of Perry. Judgment was entered on the jury verdict. We granted Vepco a writ of error to that judgment.

Since a jury verdict was rendered in Perry's favor and approved by the trial court, we must state the evidence in the light most favorable to Perry. The evidence may be summarized as follows:

The town of Reston on December 30, 1966 conveyed to Vepco a 10-foot easement parallel to North Shore Drive. It was located on the north side of the street beginning 8 feet from the curb and extending 18 feet from the curb. There was an informal agreement between Vepco and C & P that both would lay their cables within this 10-foot easement. Vepco agreed to lay its cables in the 5-foot section farthest from the curb and C & P agreed to lay its cables in the 5-foot section nearest the curb.

Vepco furnished C & P a plat showing where Vepco would lay its cables. The plat indicated that Vepco's cables would be 16 feet from the curb. After the cables were laid, Vepco placed stakes in the ground at 50-foot intervals to mark their location. On the stakes appeared the words, "Caution Electric Line Below Call Vepco."

Before the accident C & P staked the proposed location of its cable. The cable was to be laid in a trench 11 feet from the curb. On June 14, Perry went to the site for the purpose of laying C & P's cable. Before beginning its operation Perry attempted to verify the accuracy of the plat by digging two test holes along the route of the Vepco cables. A test hole was dug at Vepco's first stake and Vepco cables were found under the stake 16 feet from the curb. A second test hole was dug approximately 500 feet from the first test hole and the cable was again found 16 feet from the curb.

Perry then dug a trench without incident for a distance of about 500 feet. At this point, Perry moved its equipment around a transformer and began trenching again. After digging for a distance of 18 feet, Perry's plow struck one of Vepco's cables. David Edwards, Perry's construction foreman on the job, measured the distance between the damaged cable and the curb and found that distance to be 10½ feet. The cable was 2½ feet within the portion of the easement Vepco agreed for C & P to use, and was not 16 feet from the curb as indicated by Vepco's stakes or the plat. An employee of Vepco was notified by an employee of Perry of the damage to the cable.

Before Perry continued digging the trench it dug test holes at each Vepco stake and found cable at each hole. Also, Perry dug test holes

at intervals of 50 feet along the C & P cable route to determine whether Vepco's cables were in that portion of the easement, but no cable was found. About an hour after the Vepco cable was struck the first time, Perry again struck a Vepco cable causing extensive damage. A measurement was taken by Edwards and again it revealed that the Vepco cable was 10½ feet from the curb and not 16 feet.

The evidence further showed that at times there is a variation in the actual route of a utility cable from that shown by stakes or a plat. Vepco at all times was ready and willing to locate its lines for other utility companies, although it would not guarantee their exact location. The evidence was uncontradicted that Perry never requested Vepco to locate its lines. But the evidence also showed that utility lines can be located in other ways, such as digging test holes.

Vepco generally buried its cables approximately 36 inches below the ground, while C & P buried its cables at a depth of 24 inches. However, at the points where Vepco's cables were damaged they were at a depth of only 24 inches.

Vepco contends that it was entitled to a judgment in its favor because Perry was negligent as a matter of law. In the alternative, Vepco contends the trial court erred in refusing its instruction No. A-1.

In support of its contentions, Vepco argues that this case should not turn on the actual location of its cables so long as the cables were within the 10-foot easement. According to Vepco, a utility digging within the easement of another utility, where underground lines have been laid, is negligent if it fails to have the utility whose lines have been laid locate those lines. In order for this rule to apply Vepco concedes that it must own an easement, make the existence of its lines known and be willing to determine, on request, the location of the lines. Vepco argues that the evidence is uncontradicted that it owned the easement, that the existence of its lines were made known to other utilities, that it was willing to locate the lines, and that Perry never requested the location of the lines be determined.

Several cases from other jurisdictions are cited by Vepco in support of its position. However, we cannot glean from those decisions the rule urged upon us by Vepco.

We hold the duty of Perry in this case, which was tried on a theory of negligence, was to exercise reasonable care to locate the cables before digging and further to exercise reasonable care to avoid dam-

age to the cables while digging in the easement. Whether Perry's reliance on the plat and stakes after verifying their accuracy by digging test holes was reasonable care under the circumstances, was a question solely for the jury. Hence, the trial court committed no error in refusing to set aside the jury's verdict.

Instruction No. A-1 was properly refused by the trial court. The instruction is erroneous because it would have told the jury that Perry's duty was to inquire of Vepco as to the exact location of its cables and to refrain from digging until "Vepco had located it for them." As stated above, Perry's duty was to exercise reasonable care.

The judgment of the trial court will be

*Affirmed.*